## Rodney B. Swift v. Nettie F. McCormick, et al.

### Gen. No. 12,427.

1. INJUNCTION—*lies to maintain status quo.* Where it appears from the respective contentions of the parties that it is important that the *status quo* of the litigation be maintained, an injunction will be employed for that purpose.

Appeal from interlocutory order granting injunction. Appeal from the Circuit Court of Cook County; the Hon. JOHN L. HEALY, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed July 17, 1905.

**Statement by the Court.** Appellant makes the following statement of the bill in this case:

"In the year 1902 appellees, who had for many years been the holders and owners of a large majority of the capital stock of the McCormick Harvesting Machine Company, hereinafter called the McCormick Company, and in the active control and management of its affairs as stockholders, directors and officers, that Company having sold its assets to the International Harvester Company, hereinafter called the International Company, desired to make some recognition of the faithful and efficient services of many of the employees of the McCormick Company who had been its employees and identified with its business for some years prior to the termination thereof. To that end they transferred to three of their number, appellees Cyrus H. McCormick, Harold F. McCormick and Stanley McCormick, as trustees, trust certificates representing a large amount of the stock of the International Company, to be held by said trustees and distributed among a number of the employees of the McCormick Company in certain proportions which had been determined upon and fixed by appellees. In the distribution made in execution of the trust thus created, appellant received the certificate in controversy, representing six hundred shares of the stock of the International Company.

Appellant entered the employ of the McCormick Company

in 1880 and continued in its service up to 1902, when he entered the employ of the International Company. During his employment by the McCormick Company he occupied positions of trust and confidence with the Company and was promoted from time to time from one position to another until, during the last few years of his employment, he became one of the Company's most trusted and confidential employees. The appellees had every reason to believe that appellant during the years of his employment by the McCormick Company had rendered faithful, loyal and efficient services to it,· and at the time of the distribution of the stock in question, no facts of any kind had come to their knowledge, or to the knowledge of any of them, which would lead them to believe that he had not been a faithful and loyal employee of the Company. Appellant was taken by appellees into their confidence in the matter of the proposed distribution of stock and the subsequent details of the plan were disclosed to him. It was decided by appellees that appellant should receive as his portion of the distribution of stock six hundred shares of the stock of the International Company, and accordingly on or about, the 20th day of February, 1904, the certificate in controversy was duly executed on behalf of the appellees and delivered to him.

After the sale of the assets of the McCormick Company appellees became the owners of a large part of the stock in the International Company, a fact well known to appellant, who entered into the employ of the latter company in the latter part of 1902, and since that time has held an important and confidential position with said International Company.

Within a few weeks last past for the first time it came to the knowledge of appellees that appellant in the year 1903, and prior to the month of November in said year, was guilty of conspiring with sundry persons to defraud the International Company. During the summer of 1903 appellant was at the head of the experimental department of the International Company, and his advice and counsel in the matter of purchasing patent rights was relied upon by

the directors and officers of the Company. During that summer appellant recommended to the directors and officers that they should purchase from one Hadley certain patents for the sum of seventy-five thousand dollars, and thereupon said directors and officers, relying upon the advice of appellant, directed the purchase of the patents at said price.

Prior to said purchase one Willis C. Swift, brother of appellant, acting under the assumed name of Henry C. Chatfield, had obtained an option for the purchase of the Hadley patents for fifty thousand dollars. After the directors and officers of the International Company, on the recommendation of appellant, had authorized the purchase of the patents for seventy-five thousand dollars, said Willis C. Swift completed the purchase of the patents from Hadley and paid him therefor fifty thousand dollars, which was furnished by appellant. Shortly afterward an assignment of the patents was delivered to the International Company, and it paid therefor to one Charles S. Cairns, who was acting as attorney for said Willis C. Swift, the sum of seventy-five thousand dollars. Out of the amount thus paid appellant received from his brother the sum of $19,141, which he retained for his own use and profit. The fact that appellant made a personal profit out of the transaction was unknown to the stockholders, officers and directors of the International Company.

In procuring the option to purchase the Hadley patents said Willis C. Swift acted under the direction and advice of appellant, and appellant well knew that the patents could be purchased for $50,000, and entered into a conspiracy with his brother to purchase the patents, relying upon his influence with the officers of the International Company and in the confidence which they reposed in him to induce them to pay for the patents a sum largely in excess of the amount for which Hadley was willing to sell. The entire transaction of the purchase of the patents was a fraud upon the International Company devised and engineered by appellant for the purpose of making money for himself out of that Company.

In May, 1902, said Willis C. Swift, acting under the same assumed name of Henry C. Chatfield, purchased from a Mrs. D. F. Lottridge a six-eighteenths interest in certain letters patent then owned by her for the sum of $100, taking an assignment in his assumed name of Henry C. Chatfield, May 22, 1902. Afterwards appellant, acting on behalf of the McCormick Company, purchased from his brother said six-eighteenths interest in said patent and upon appellant's recommendation the McCormick Company paid for said interest the sum of $3,250 by its check drawn to the order of said Charles S. Cairns, who was then acting for and on behalf of said Willis C. Swift, and thereupon the latter, under his assumed name of Henry C. Chatfield, transferred said six-eighteenths interest in said patent to the McCormick Company by instrument dated June 27, 1902.

Appellant, as appellees are informed and believe, received for his own use a large part of the purchase price which was paid by the McCormick Company for said Lottridge patent, and the fact that he had made a large profit out of the purchase was unknown to the officers, directors and stockholders of said company. Appellant, as appellees are informed and believe, directed his brother to purchase said Lottridge patent and furnished the money therefor with the intent and purpose of subsequently selling the same to the McCormick Company at a largely enhanced price, and appellant relied upon the trust and confidence reposed in him by the officers and directors of the McCormick Company to induce them to pay for the Lottridge patent a sum largely in excess of the price paid therefor by him and largely in excess of its real value. Said entire transaction was a fraud upon the McCormick Company devised by appellant for his own profit.

Appellant, as appellees are informed and believe, at other times in the year 1902 and in the years prior thereto, took advantage of his confidential position with said McCormick Company and of the trust and confidence reposed in him by the stockholders, directors and officers thereof, to defraud the Company in other ways.

It was well known to appellant that the gifts of stock made to the employees of the McCormick Company by the appellees were made on account of faithful, loyal and efficient service to that company. If the facts above set forth concerning the conduct of appellant in relation to the business of the McCormick Company and of the said International Company had been known to appellees at the time they gave appellant the certificate in controversy, representing six hundred shares of International Company stock, no such gift and no gift of any kind whatsoever would have been made by appellees to appellant. Appellant well knew that if the transactions by which he had defrauded the McCormick Company and the International Company, as above set forth, had been known to appellees, no gift of any kind would have been made by appellees to him. In order to receive a share in said stock distribution appellant, well knowing that said distribution was contemplated, concealed from appellees all knowledge of the various transactions by which he had defrauded said company and had betrayed the confidence of appellees and the Company's directors and officers. It was solely by reason of the concealment by appellant of the various transactions above herein set forth that appellant was enabled to obtain a share in said stock distribution. Said gift of six hundred shares of stock from appellees to appellant was obtained by appellant by fraudulent concealment on his part of facts which it was his duty to disclose to appellees. Appellant was not in fact entitled to receive any gift from appellees, and said gift was made by appellees and obtained by appellant through the fraudulent procurement of appellant.

By reason of the facts above set forth appellees have elected to revoke and rescind the said gift of six hundred shares of stock to appellant, the reasonable value of which is $60,000."

The prayer of the bill is for a writ of injunction restraining appellant from in any manner transferring or disposing of the certificate in question until the further order of the court, and that upon final hearing it may be decreed by the

court that the gift made by appellees to appellant was procured by fraud and concealment on the part of appellant, and that appellees have a right in equity to revoke said gift and recover said certificate, and that appellant may be decreed by the court to surrender and deliver up the certificate to appellees, or in case it shall appear that he has disposed of the certificate, that appellees may have a decree against him for its money value.

The bill is verified by the affidavit of appellee Cyrus H. McCormick, which sets forth that its allegations are true of his own knowledge, except the allegations therein stated to be upon information and belief, which allegations he believes to be true, and that the rights of appellees will be unduly prejudiced if the injunction prayed for in the bill is not issued immediately and without notice to the appellant.

Upon the bill thus verified the court, without notice to appellant, entered an order restraining appellant, until the further order of the court, from in any manner transferring or disposing of Certificate No. 4, dated February 20, 1904, known as a "McCormick Certificate of Interest in International Harvester Company Stock," representing six hundred fully paid shares of the par value of $60,000, mentioned in said bill. From this interlocutory order the present appeal was perfected.

HIRAM T. GILBERT, for appellant.

WILSON, MOORE & McILVAINE, for appellees.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

The injunction in this case prevents appellant from disposing of the gift made to him by appellees until the further order of the court. In this action appellees seek to have the gift revoked and to have the certificate returned to them for alleged fraud. The state of the pleadings is such that all material facts well pleaded in the bill are admitted to be true. If these facts are established and unanswered on the

hearing they will strongly tend to prove that appellant, at the time the gift was made, did not belong to the class of faithful employees whom appellees were desirous of and intending to reward. The circumstances of the gift are unusual, and the certificate is peculiar in some of its conditions. It is not proper for us to pass upon the merits of the case on this interlocutory appeal. The oral and printed arguments of counsel for the respective parties have convinced us that this injunction should stand until the final hearing, and that so to order will not harm the appellant beyond the reparation afforded by the injunction bond.

The decree of the Circuit Court is affirmed.

*Affirmed.*